UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MANUEL A. PONCE,

    Plaintiff,

v.                                Case No: 2:17-cv-137-FtM-99CM

CITY OF NAPLES,
    Defendant.

## OPINION AND ORDER

This matter comes before the Court on defendant's Motion to Dismiss (Doc. #10) filed on March 27, 2017. Plaintiff filed a Response (Doc. #15) on April 24, 2017; a Reply (Doc. #20) was also filed. On April 6, 2017, defendant filed a Notice of Partial Withdrawal of its Motion to Dismiss (Doc. #13), withdrawing its argument for dismissal under the Florida Civil Rights Act (Counts I-IV); therefore, the Court will not consider dismissal of these counts. For the reasons set forth below, the motion is granted with leave to amend.

**I.**

This is a disability, age, race, and national origin discrimination case brought by plaintiff Manuel A. Ponce (plaintiff or Ponce), a fifty-three year old Hispanic male of Cuban descent, against his former employer of twenty-seven years, the City of Naples (defendant or City). Plaintiff filed a

thirteen count Complaint (Doc. #2) in state court on February 8, 2017, which was removed to this Court on March 8, 2017, based upon federal question jurisdiction. The Complaint alleges violations under the Florida Civil Rights Act (FCRA) (Counts I-V), Family Medical Leave Act (FMLA) (Counts VI-VII), Americans with Disabilities Act (ADA) (Counts VIII-X), Title VII (Count XI), 42 U.S.C. § 1981 (Count XII), and the Age Discrimination in Employment Act (ADEA) (Count XIII).

As alleged in plaintiff's Complaint (Doc. #2), plaintiff was initially hired by the City on or about September 26, 1988, in the Solid Waste Division as a Service Worker II. (Id. ¶ 8.) Throughout his employment, plaintiff was also classified as a Service Worker III, Equipment Operator III and IV, and Meter Reader. (Id. ¶ 9.) In 2011, plaintiff was promoted to the position of Heavy Equipment Operator, the position he held as of the date of his termination of employment in February 2016. (Id. ¶ 10.) Plaintiff worked as a Front Load Driver from 2009-2013, emptying large commercial dumpsters throughout the City. (Id. ¶ 11.)

In October 2013, plaintiff suffered a heart attack and remained out of work for approximately one month. (Doc. #2, ¶ 12.) Upon his return to work at the City, he was assigned to drive a dumpster carrier, which was a smaller truck, and his job function was to retrieve, exchange, and/or distribute dumpsters

throughout the City.  (Id.)  He remained in this job function until in or about May 2015.  (Id.)

In December 2014, after experiencing pain in his right shoulder, an MRI revealed a torn rotator cuff.  (Doc. #2, ¶ 13.) At that time, plaintiff elected to forego any surgical or other medical intervention and continued operating the dumpster carrier without any problems.  (Id. ¶ 14.)  In April 2015, due to a coworker's absence, plaintiff's supervisor assigned him to perform residential garbage collection which required manual pickup of garbage containers.  (Id. ¶ 15.)  In doing so, plaintiff injured his shoulder.  (Id.)  Plaintiff notified the City of his injury and initiated a worker's compensation claim.  (Id.) Plaintiff's medical providers assigned him to light duty, which he remained from May to August of 2015 while receiving various medical treatments for his shoulder injury.  (Id. ¶ 16.)

The light duty assignments included picking weeds and other landscape work on City property for which plaintiff was never trained and had not previously done, and was otherwise physically unequipped to perform.  (Doc. #2, ¶ 16.)  In July 2015, plaintiff suffered a heat stroke and was taken to the emergency room; despite this, the City assigned plaintiff to pick weeds again one week later, when plaintiff suffered another heat stroke, requiring medical attention.  (Id. ¶¶ 17-18.)

On or about August 19, 2015, plaintiff underwent surgical repair of his shoulder, remaining out of work on FMLA leave until on or about December 22, 2015. (Doc. #2, ¶ 19.) Upon returning to work, the City inexplicably notified plaintiff that he was being placed on probation. (Id. ¶ 20.) The City also told plaintiff that he did not know how to speak English, and "speaks gibberish." (Id. ¶ 21.) Furthermore, without justification, on January 19, 2016, defendant accused plaintiff of misconduct without justification and suspended his employment for three days. (Id. ¶ 22.) Defendant again accused plaintiff of misconduct on January 25, 2016. (Id. ¶ 23.)

On or about February 4, 2016, the City advised plaintiff that he could resign his employment, and that if he failed to do so, the City would terminate his employment. (Doc. #2, ¶ 24.) Plaintiff no longer works for the City and the City replaced plaintiff with an individual who is significantly younger. (Id. ¶ 25.) Plaintiff has received a Notice of Right to Sue letter from the Equal Employment Opportunity Commission. (Id. ¶ 26.)

Defendant now moves to dismiss Counts VI, VIII, X, and XI[1] for failure to state a claim.

---

[1] Defendant withdrew its motion to dismiss as to Counts I-IV (FCRA counts) (Doc. #13).

**II.**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being

facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**III.**

**A. FMLA Interference Claim (Count 6)**

The City moves to dismiss Count 6, which is a claim for interference with plaintiff's rights under the Family Medical Leave Act, 29 U.S.C. § 2615(a)(1), arguing that plaintiff does not plead facts that his request to seek FMLA leave was interfered with or that he was denied leave, citing the fact that plaintiff was allowed to take FMLA leave. (Doc. #10, pp. 11-13.) Plaintiff responds that he has pled that upon returning from FMLA leave on December 22, 2015, he was not reinstated with the terms and conditions equivalent to those he had before he took leave in violation of his rights under the FMLA.

"Under the FMLA, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for a serious health condition that makes the employee unable to perform the functions of her position." Gilliard v. Georgia Dep't of Corr., 500 F. App'x 860, 864 (11th Cir. 2012). Additionally, "[a]n employee has the right following FMLA leave to be restored

by the employer to the position of employment held by the employee when the leave commenced or to an equivalent position."[2]  Martin v. Brevard Cnty. Pub. Sch., 543 F.3d 1261, 1267 (11th Cir. 2008). "To protect this right, the FMLA allows employees to bring a private cause of action for interference or retaliation." Hurley v. Kent of Naples, Inc., 746 F.3d 1161, 1166 (11th Cir. 2014). To prevail on a FMLA retaliation claim, "an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right."  Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1207 (11th Cir. 2001).  The Complaint contains both interference (Count VI) and retaliation (Count VII) claims, but the City only moves to dismiss the interference claim.

To support a claim for interference, Ponce "must demonstrate only that []he was denied a benefit to which she was entitled under the FMLA." Schaaf v. Smithkline Beecham Corp., 602 F.3d 1236, 1241 (11th Cir. 2010) (quoting Martin, 543 F.3d at 1266–67 (11th Cir. 2008)).  The right to FMLA leave and the right to return to an equivalent position post-leave are both FMLA benefits. Gilliard, 500 F. App'x at 864; Martin, 543 F.3d at 1267.

---

[2] An employer can deny the right to reinstatement, however, if it can demonstrate that it would have discharged the employee had he not been on FMLA leave. O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1353–54 (11th Cir. 2000).

As Ponce concedes that he was granted FMLA leave[3] (Doc. #2, ¶ 19), his claim for FMLA interference rests on his assertion that "Defendant failed to cooperate with Plaintiff in his attempt to exercise his FMLA rights, and otherwise interfered with, restrained or denied Plaintiff's exercise of or the attempt to exercise his rights under the FMLA in direct violation of 29 U.S.C. § 2615(a)(1)." (Id. ¶ 80.) However, other than this "formulaic recitation of the elements," Ponce alleges no facts to support his claim that his post-leave position at the City was not equivalent to his pre-leave position. Accordingly, Ponce's FMLA interference cause of action (Count VI) is dismissed with leave to amend.[4]

---

[3] The City does not dispute that shoulder surgery is a serious health condition. 29 U.S.C. § 2611(11).

[4] The City argues for the first time in its Reply that the FMLA interference claim fails because plaintiff's alleged termination occurred after he took leave in excess of the 12 weeks allowed under the FMLA, citing Jones v. Gulf Coast Health Care of Delaware, LLC, 854 F.3d 1261 (11th Cir. 2017), a decision decided after the City submitted its Motion to Dismiss. "The purpose of a reply brief is to rebut any new law or facts contained in an opposition's response to a request for relief before the Court." Tardif v. People for Ethical Treatment of Animals, No. 2:09-cv537-FtM-29SPC, 2011 WL 2729145, at *2 (M.D. Fla. July 13, 2011). Because the arguments were not a true "reply" in the sense that it does not rebut any arguments raised by plaintiff's opposition, and because plaintiff has otherwise not had the opportunity to respond to this new theory of dismissal, the Court will not consider this argument as it relates to the pending Complaint.

**B. ADA Claims**

Ponce has brought claims under the ADA for failure to accommodate (Count VIII), disparate treatment (Count IX), and retaliation (Count X). The City argues as to all counts that plaintiff's claimed disability is supported by nothing more than conclusory allegations regarding plaintiff's condition of which the City was unaware. (Doc. #10, pp. 4-8.)

**1. Disability**

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines "disability" as either "a physical or mental impairment that substantially limits one or more major life activities ... a record of such an impairment ... or being regarded as having such an impairment." 42 U.S.C. § 12102(1). In turn, "major life activities" is defined to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2)(A). "Major life activities" also include the operation of "major bodily function[s] including, but not limited to, functions of the immune system, normal cell growth, digestive,

bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." Id. § 12102(2)(B). The EEOC's regulations state that "major life activities" include functions of the cardiovascular and musculoskeletal systems. 29 C.F.R. § 1630.9(i)(1)(ii). The definition of "disability" shall be "construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).

Here, in support of his ADA claims, Ponce alleges that he "suffered from the medical conditions as heretofore described and was substantially limited as having an impairment that substantially limited one or more of life's major activities." (Doc. #2, ¶¶ 95, 105, 115.) The Complaint further alleges that following plaintiff's heart attack, he remained out of work due to his medical condition. (Id. ¶ 12.) And following a workplace accident where plaintiff injured his shoulder, he initiated a worker's compensation claim and performed light duty at the direction of his medical providers. (Id. ¶¶ 15-16.) Plaintiff remained out of work on FMLA leave from August to December 2015, following the surgical repair of his shoulder. (Id. ¶ 19.) From these allegations, the Court may draw the reasonable inference that plaintiff has impairments of the cardiovascular and musculoskeletal systems that affect major life activities,

including lifting, bending, and working.  The Complaint thus plausibly alleges that plaintiff is "disabled" under the ADA.[5]

## 2. Failure to Accommodate (Count VIII)

Defendant argues that plaintiff does not allege facts from which it can be inferred that he requested a disability accommodation from the City at any time.  Plaintiff responds that his physician's light work restrictions constitute a request for a reasonable accommodation.

Under Title I of the ADA, "[a]n employer "discriminate[s] against a qualified individual on the basis of disability" by, inter alia, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5)(A).  Thus:

> To state a prima facie claim for failure to accommodate under the ADA, a plaintiff must show that: (1) he is disabled; (2) he is a qualified individual, meaning able to perform the essential functions of the job; and (3) he was discriminated against because of his disability by way of the defendant's failure to provide a reasonable accommodation.

Russell v. City of Tampa, 652 F. App'x 765, 767 (11th Cir. 2016)

---

[5] The Complaint also plausibly alleges that defendant knew of plaintiff's impairments. (Doc. #2, ¶¶ 95, 105, 115.)

(per curiam) (citing Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001)). Plaintiff challenges the first and third elements.

As discussed above, the Court has found that plaintiff has adequately pled that he suffers from a disability as defined by the ADA. In order to satisfy the pleading burden with respect to the third element of a failure to accommodate, the Complaint must allege facts from which the Court may infer that a reasonable accommodation existed and was denied to the plaintiff, and that providing that accommodation would not have imposed an undue hardship on the employer. See 42 U.S.C. § 12112(b)(5)(A). An accommodation is only reasonable if it allows the disabled employee to perform the essential functions of the job in question. Lucas, 257 F.3d at 1255. What constitutes a reasonable accommodation depends on the circumstances, but it may include "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position" among other things. 42 U.S.C. § 12111(9)(B). "Moreover, an employer's duty to provide reasonable accommodation is not triggered unless a specific demand for an accommodation has been made. Frazier-White v. Gee, 818 F.3d 1249, 1256 (11th Cir. 2016) (quoting Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363–64 (11th Cir. 1999)) ("[T]he initial burden of requesting an accommodation is on the employee. Only after the employee has satisfied this

burden and the employer fails to provide that accommodation can the employee prevail on a claim that her employer has discriminated against her.").

Here, in support of his failure to accommodate claim, plaintiff states that "defendant discriminated against plaintiff by wrongfully denying his requests for a reasonable accommodation and instead forcing him to pick weeds in extreme weather conditions which plaintiff was not equipped to handle." (Doc. #2, ¶ 97.) The Court agrees with the City that plaintiff has not plausibly alleged that he made a reasonable accommodation request that was refused by the City, and the Court is not otherwise convinced that a light-work duty restriction automatically satisfies as an accommodation request without specifically pleading as much in the Complaint.[6] Therefore, Count VIII is dismissed without prejudice with leave to amend.

### 3. Retaliation (Count 10)

The City next argues that plaintiff's ADA retaliation claim does not allege any facts that he engaged in protected activity. The ADA prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). This prohibition is analyzed "under the same framework ... employ[ed] for retaliation

---

[6] Indeed, plaintiff cites no binding authority for this proposition.

claims arising under Title VII." Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997). Accordingly, "[t]o establish a prima facie case of retaliation, a plaintiff must show: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action." Id. A plaintiff's request for a reasonable accommodation under the ADA constitutes protected activity. See Lucas, 257 F.3d at 1261; Siudock v. Volusia Cnty. Sch. Bd., No. 12-CV-503, 2013 WL 6187537, at *16 (M.D. Fla. Nov. 25, 2013) aff'd, No. 13-15576, 2014 WL 2463009 (11th Cir. June 3, 2014).

Plaintiff alleges the following in support of his retaliation claim: "Following and as a result of plaintiff's request for reasonable accommodation, defendant retaliated against plaintiff by instead forcing him to pick weeds in extreme weather conditions which plaintiff was not equipped to handle, by placing him on probation, and by suspending and terminating his employment." (Doc. #2, ¶ 116.) As set forth above, the Court has found that plaintiff has not plausibly alleged that he made a reasonable accommodation request to the City. Therefore, the Court finds that as currently pled, the Complaint does not sufficiently allege that plaintiff engaged in a statutorily protected activity for which the City retaliated against him. Therefore, Count X is dismissed without prejudice with leave to amend.

**C. Title VII, Race/National Origin Discrimination (Count 11)**

Plaintiff alleges race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964. Specifically, plaintiff alleges that he is of Cuban descent and therefore a member of a protected class and that his race and national origin was a motivating factor in the defendant's treatment in placing him on probation, suspending him, and terminating his employment. (Doc. #2, ¶¶ 122-23.) The City argues that this claim fails because Ponce has not alleged any discriminatory intent on the part of the City.

Assuming plaintiff's proof of discrimination will be circumstantial, to establish a prima facie case under Title VII, plaintiff must show: (1) that he belongs to a protected class; (2) that she suffered an adverse employment action; (3) that he was qualified to do his job; and (4) that he was treated less favorably than similarly situated employees outside of the protected class. Lathem v. Dep't of Children & Youth Serv., 172 F.3d 786, 792 (11th Cir. 1999). As the Eleventh Circuit has emphasized, "[d]emonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." Holified v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

Here, plaintiff has alleged that he is a member of a protected class (Doc. #2, ¶ 123) and that he suffered adverse

employment actions (id. ¶ 122), but the Court finds no plausible allegations wherein plaintiff alleges that he was qualified to do his job, nor that the City treated him less favorably than similarly situated employees outside of the protected class. Therefore, Count XI will be dismissed without prejudice with leave to amend.

**D. Section 1981 (Count 12)**

Plaintiff agrees that his Section 1981 claim fails, and he agrees to withdraw this claim. (Doc. #15, p. 9.)

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendant's Motion to Dismiss (Doc. #10) is **GRANTED.** Counts VI, VIII, X, and XI are **DISMISSED without prejudice** to filing an Amended Complaint within **FOURTEEN (14) days** of this Opinion and Order.

2. Count XII is deemed **withdrawn**.

**DONE and ORDERED** at Fort Myers, Florida, this   22nd   day of June, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record